## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **NO. H-17-CR-514-2** |
| | § | |
| **NERVIS GERARDO** | § | |
| **VILLALOBOS-CÁRDENAS** | § | |

## DEFENDANT VILLALOBOS'S MOTION TO DISMISS
## COUNTS ONE, TWO, AND FOUR OF THE INDICTMENT

In some cases, a person can conspire to commit a crime even if he is not criminally liable for violating the substantive offense. The Foreign Corrupt Practices Act ("FCPA"), however, is different. Based on foreign policy and extraterritoriality concerns, the FCPA excludes certain categories of people from liability. And in the words of the Fifth Circuit, it would be an "absurd" end-run around the FCPA to allow a prosecution for "conspiracy" against a person who cannot be charged substantively.[1] The same logic applies to prosecuting an exempt person for money laundering when the underlying crime, the "specified criminal activity," is an alleged violation of the FCPA. In addition, the text of the money laundering statute itself (18 U.S.C. §1956(f)) prohibits prosecution of non-citizens unless they engage in illegal conduct inside the United States. As explained below,

---

[1] *United States v. Castle*, 925 F.2d 831, 836 (5th Cir. 1991).

and pursuant to Federal Rule of Criminal Procedure 12(b)(2) & (b)(3), defendant Nervis Villalobos moves this Court to dismiss Counts One, Two, and Four of the Indictment for lack of jurisdiction and failure to allege an offense.

The primary argument (in Parts IA and IB below) is that the statutes governing the three indicted offenses are clear and do not apply to a foreigner for foreign conduct, but we offer two alternative arguments as well. First, if the court finds that the statutes are *not* clear concerning extraterritorial jurisdiction against Mr. Villalobos, then they are ambiguous, and Part II of this motion explains that dismissal would be warranted under both the general presumption against extraterritorial application of U.S. laws[2] and a separate presumption – the *Charming Betsy* presumption, which takes into consideration international law.[3] Finally, Part III argues that dismissal is required under the Due Process Clause because the statutes as applied to Mr. Villalobos's alleged conduct are vague and failed to give *fair notice* of what they forbade to a foreigner for alleged foreign conduct.

---

[2] *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090, 2100 (2016).

[3] *Murray v. Schooner Charming Betsy*, 6 U.S. (2 Cranch) 64, 118 (1804).

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................5

    A. The Charges ............................................................................................5

    B. A Challenge to the Government's Extraterritorial Jurisdiction Over
       a Foreign Defendant Is Properly Raised in a Pretrial Motion...................7

IA.   THIS COURT SHOULD DISMISS COUNT TWO AGAINST
      MR. VILLALOBOS FOR LACK OF EXTRATERRITORIAL
      JURISDICTION .........................................................................................9

    A. Count Two: *Castle* and *Hoskins* Require Dismissal .................................9

    B. The Three FCPA Categories ..................................................................13

IB.   COUNTS ONE AND FOUR SHOULD ALSO BE DISMISSED FOR
      LACK OF EXTRATERRITORIAL JURISDICTION OVER MONEY
      LAUNDERING ........................................................................................16

    A. The Logic of *Hoskins* and *Castle* Should be Extended to Money
       Laundering: Because Mr. Villalobos Cannot be Prosecuted Under the
       FCPA, He Cannot Be Prosecuted for Money Laundering Offenses
       Based on FCPA Violations as a "Specified Unlawful Activity" .............17

    B. 18 U.S.C. § 1956(f) Limits the Extraterritorial Reach of the Money
       Laundering Statute Regarding Foreigners.................................................19

      i.  Count One........................................................................................21

      ii. Count Four.......................................................................................23

II.    AN ALTERNATIVE PRESUMPTION AGAINST
      EXTRATERRITORIAL JURISDICTION: *CHARMING BETSY* ...............24

    A. The *Charming Betsy* Presumption...........................................................24

    B. The Relevant Statutory Provisions Are at Least Ambiguous..................25

C.  Extraterritoial Application of the Statutory Charges to
Mr. Villalobos Would Violate International Law ....................................28

i.   Protective Principle ...............................................................31

ii.  Universality Principle..........................................................31

III.      BECAUSE THE FCPA AND THE MONEY
LAUNDERING STATUTE DID NOT GIVE MR. VILLALOBOS
FAIR NOTICE THAT HE COULD BE PROSECUTED IN THE U.S.
FOR HIS ALLEGED CONDUCT ABROAD, THIS COURT SHOULD
DISMISS COUNTS ONE, TWO, AND FOUR UNDER THE DUE
PROCESS CLAUSE OF THE FIFTH AMENDMNET .........................33

IV.       CONCLUSION ........................................................................36

## INTRODUCTION

### A. <u>The Charges</u>

Mr. Villalobos is a citizen of Venezuela who (during the time period covered by the indictment) lived in Venezuela and was not a public official. *See* Indictment, paragraph 8. He is charged in Counts, One, Two, and Four of the 20-count indictment. All three counts are based on the same course of conduct and are discussed below in their logical order (starting with count two).

**Count Two** alleges that Mr. Villalobos and codefendant De Leon, a United States citizen, violated 18 U.S.C. §371 by conspiring to violate the FCPA (15 U.S.C. § 77dd-2(a)). They allegedly agreed to bribe foreign officials in Venezuela to help U.S. businessmen get paid on their contracts from the Venezuela national oil company (and also allegedly to obtain more contracts). Those U.S. businessmen (Roberto Rincon and Abraham Shiera) were "domestic concerns" under the FCPA and allegedly sent the bribes from their American bank accounts to an account in Switzerland, for which De Leon and Mr. Villalobos were signers. *See* Indictment, paragraphs 15-24, 133-159. From that first Swiss account, De Leon directed money to a second Swiss account for the Venezuelan public official.

**Count One** charges that Mr. Villalobos and others, including at least one United States citizen, conspired to commit money laundering, in violation of 18 U.S.C § 1956(h). S*ee* Indictment, paragraphs 7, 9-11. The specific allegation is two-fold:

5

first, he and others conspired to violate § 1956(a)(1)(B) by engaging in financial transactions designed to conceal or disguise the proceeds of a "specified unlawful activity," *namely, FCPA bribery of a foreign official*; and, second, he and others conspired to violate § 1956(a)(2)(A) by transporting, transmitting, or transferring funds from a place in the United States to a place outside of the United States with the intent to promote a "specified unlawful activity," *the same FCPA bribery*.

**Count Four** alleges that Mr. Villalobos and codefendant De Leon violated 18 U.S.C. § 1956(a)(1)(B)(i) by conducting, aiding and abetting, and causing others to conduct a financial transaction – "a $515,513.20 wire from Rincon Company 2 [a company located in the Southern District of Texas] to [a] Swiss account [] on or about October 16, 2011" – designed to conceal or disguise the proceeds of a "specified unlawful activity," *i.e.*, bribery of a foreign official, in violation of FCPA.

In sum, all three counts are premised on the same alleged violations of the FCPA.



## B.  **A Challenge to the Government's Extraterritorial Jurisdiction Over a Foreign Defendant Is Properly Raised in a Pretrial Motion**

Pretrial dismissal of an indictment, although not common, is appropriate where the facts that would require dismissal are not reasonably in dispute and the motion to dismiss turns on a question of law.  *United States v. Kaluza*, 669 F.3d 647, 653, 657-69 (5th Cir. 2015) (*affirming pretrial dismissal* of "seaman's manslaughter" charges in the *Deepwater Horizon* case, concluding that the law applies only to categories of employees listed in the statute (i.e. the "captain or pilot" of the ship) and not to "drillers"); *United States v. Radley*, 632 F.3d 177, 184 (5th Cir. 2011) (*affirming pretrial dismissal* of indictment alleging commodities manipulation when the commodity trades fit within a statutory exception);  *United States v. Flores*, 404 F.3d 320, 324 n.6 (5th Cir. 2005) (holding that a "district court may make preliminary findings of fact necessary to decide the question of law presented by pre-trial motions so long as the court's findings on the motion do not invade the province of the ultimate finder of fact" (citation omitted).

Specifically, a pretrial motion is proper to challenge the extraterritorial scope of the FCPA and the money laundering statute when premised on a violation of the FCPA.  *United States v. Hoskins*, 902 F.3d 69 (2d Cir. 2018) (*affirming district court's pretrial dismissal* of FCPA count based on its conclusion that the FCPA did not apply in an extraterritorial manner to the defendant); *cf. United States v. Hawit*,

2017 WL 663542, at *8 (E.D.N.Y. Feb. 17, 2017) (entertaining pretrial motion to dismiss counts of indictment alleging money laundering based on arguments that the statute did not apply extraterritorially to the defendant).  The defendants in *Kaluza, Radley,* and *Hoskins* all prevailed in pretrial motions contending that they were not covered by the statutes pled in their indictments – respectively, the Seaman's Manslaughter Statute, the Commodities Exchange Act, and the FCPA.  As set out below, Villalobos is similarly situated and, thus, this Court should rule on the merits of his motion.

This motion sets forth three primary arguments for dismissal.  Parts IA and I B explain why there is no extraterritorial jurisdiction to prosecute Mr. Villalobos for the offenses alleged in Counts One, Two, or Four.  Part II explains that, in the alternative, the extraterritorial application of the law is at best "ambiguous" in the relevant statutes and thus fails because of legal presumptions against extraterritorial reach.  Part III explains why this prosecution would also violate the Due Process Clause of the Fifth Amendment.[4]

---

[4]  The government may argue that Mr. Villalobos is a "fugitive" who is "disentitled" to file motions until he appears in Houston.  But Mr. Villalobos is not a fugitive.  He lived mainly in Venezuela during the indictment period (2011-2013) and then moved to Spain, where he was living when this indictment was filed in 2017.  He never "fled" this Court's jurisdiction.

Moreover, Mr. Villalobos *cannot* come to the United States.  When the U.S. filed this case and sought extradition from Spain, Mr. Villalobos was already under a separate criminal investigation in Spain over a Spanish company's dealings in Venezuela.  And even though Mr. Villalobos waived extradition, he is under "conditions of release" that include travel restrictions and surrender

# IA.

## THIS COURT SHOULD DISMISS COUNT TWO AGAINST MR. VILLALOBOS FOR LACK OF EXTRATERRITORIAL JURISDICTION.

### A. Count Two: *Castle* and *Hoskins* Require Dismissal

We first address Count Two – conspiracy to violate the FCPA, in violation of 18 U.S.C. §371.  It is controlled by two cases: *United States v. Castle* and *United States v. Hoskins*.

Last year the Second Circuit rendered its landmark decision in *Hoskins,* which concerned a defendant similarly situated to Mr. Villalobos – a non-citizen who conspired with a U.S. citizen and others to bribe a foreign official abroad.  *Hoskins*

---

of his passport, and the Spanish court will not release him to the United States until the case in Spain has been adjudicated.

Thus, this motion does not implicate the "rarely invoked," mostly civil "fugitive disentitlement doctrine."   "The fugitive-disentitlement doctrine is discretionary, sparingly invoked, and rarely applied." *Odonnell v. Harris County, Texas*, 227 F. Supp.3d 706, 727 (S.D. Tex. 2016) (Rosenthal, J.) (citing *Degen v. United States*, 517 U.S. 820 (1996)), *rev'd in part on other grounds*, 892 F.3d 147 (5th Cir. 2018); *see also United States v. Khoury*, 2018 WL 2864413, at *3 (S.D. Tex. June 11, 2018) (Ellison, J.) (refusing to apply the "sparingly used" doctrine to block a motion from a Lebanese resident to dismiss his Houston indictment); *see In re Hijazi*, 589 F.3d 401 (7th Cir. 2009) (refusing to apply the fugitive disentitlement doctrine to a foreign defendant living abroad when there was no evidence that he was taking affirmative steps to avoid coming to the United States); *cf. United States v. Oliveri*, 190 F.Supp.2d 933, 934 (S.D. Tex. 2001) (Lake, J.) (in contrast, properly applying the doctrine to a foreign defendant who "purposely absent[ed] himself from the United States in order to avoid arrest and arraignment")..

Finally, the arguments made in this motion are legal, not factual; they do not require Mr. Villalobos' physical presence; and they relate to subject matter jurisdiction.  *See Employers Ins. Of Wausa v. Crown Cork & Seal Co., Inc.*, 905 F.2d 42, 45 (3d Cir. 1990) ("It is an elementary principle that federal courts are courts of limited jurisdiction. . . .  A federal court is bound to consider its own jurisdiction preliminary [to addressing other matters in the case].") (citations and internal quotation marks omitted).

held that one who cannot be criminally liable for violating the FCPA as a principal also cannot be prosecuted for aiding and abetting others (complicity) or conspiring to violate the FCPA. *Hoskins*, 902 F.3d at 97 ("[T]he presumption against extraterritoriality bars the government from using the conspiracy and complicity statutes [18 U.S.C. §§ 2 & 371] to charge Hoskins with any offense that is not punishable under the FCPA itself because of the statute's territorial limitations.").

*Hoskins* found support in the Fifth Circuit's 1991 decision in *Castle*. Castle was a Canadian public official who took a bribe from a U.S. businessperson. The FCPA, however, *excludes* the foreign pubic official "bribee" from liability. Thus, "the question [in *Castle* was] *whether foreign officials, who … cannot [be prosecuted] under the FCPA itself, may be prosecuted under the general conspiracy statute for conspiring to violate the Act*." *Castle*, 925 F.2d at 832 (emphasis added). The Fifth Circuit held a foreign official *cannot* be prosecuted for conspiracy and affirmed the district court's dismissal of the indictment.

First, the Fifth Circuit contrasted the FCPA – which excludes the foreign public official who takes bribes from liability – with domestic bribery statutes such as 18 U.S.C. §§ 201 and 210-215, which criminalize both the payment *and the receipt* of a bribe. Clearly, excluding bribe recipients in the FCPA was intentional. In addition, the legislative history of the FCPA shows that Congress's "exclusive focus was on the U.S. companies [who pay bribes] and the effects of their conduct

within and on the United States," while limiting the impact on foreign relations. *Castle*, 925 F.2d at 834.

The Fifth Circuit then held that, because a foreign official who accepts a bribe cannot be prosecuted for FCPA, he also cannot be prosecuted for conspiracy to violate the FCPA. Indeed, the court stated that it would be "absurd" to think that Congress intended the conspiracy statute to reach people who were excluded from the substantive crime. *Id*. at 836. In drafting the law, Congress wanted to avoid the "'inherent jurisdictional enforcement, and diplomatic difficulties' raised by the application of the [FCPA] to non-citizens . . . ." *Castle*, 925 F.2d at 835 (quoting legislative history). This means that some people whose acts are necessary to consummate foreign bribery are not subject to prosecution within the United States. *Id*. at 836. The Fifth Circuit reasoned that, by expressly listing the three categories of the persons whom the government could prosecute under the FCPA, Congress did not intend the conspiracy statute to expand liability to others not listed. *Castle*, 925 F.2d at 836.

### ***Hoskins***

Because so few FCPA cases are litigated, the next logical step in the case law did not come until in 2018, when *Hoskins* held that the general conspiracy statute, 18 U.S.C. § 371, also could not be applied to a foreign national living abroad who

facilitated a bribe to a foreign public official (but was not himself a foreign public official). *Hoskins*, 902 F.3d at 84, 101.

Hoskins was a British citizen who worked for a French company in Indonesia. He and others, including people who worked for a U.S. affiliate of the same company with headquarters in Connecticut, bribed government officials in Indonesia so that the company could secure a large contract from the Indonesian government. Some of the bribe money was paid out of bank accounts in the U.S. controlled by Hoskins's coconspirators. Hoskins personally committed several acts in furtherance of the bribery scheme abroad but none within the United States (nor did he himself control any of the American bank accounts used in the bribery scheme). *See Hoskins*, 902 F.3d at 72-73. The relevant portion of the indictment did not charge that Hoskins violated the FCPA as a principal and, instead, alleged that he was liable for *conspiring* with,[5] and being *complicit* with,[6] others located in the United States or who were agents of American companies. *Id.*

---

[5] 18 U.S.C. § 371 ("If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.").

[6] 18 U.S.C. § 2, which provides:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

Hoskins moved to dismiss the FCPA conspiracy charge on the ground that the FCPA does not permit the exercise of extraterritorial jurisdiction over a non-citizen for conspiracy whose criminal conduct occurred abroad and who was not an agent of an American company. The district court agreed and dismissed the indictment pretrial, and the Second Circuit affirmed. *See Hoskins*, 902 F.3d at 76-98. The Second Circuit's decision focused on three main points – the language of the FCPA, the presumption against extraterritorial application of federal statutes, and the legislative history of the FCPA. *See id.*

### B. <u>The Three FCPA Categories</u>

Like Messrs. Castle and Hoskins, Mr. Villalobos cannot be charged – and is not charged – with violating the FCPA because he does not fall within the categories of persons that it covers. As the Second Circuit explained:

> The FCPA establishes three clear categories of persons who are covered by its provisions: (1) Issuers of securities registered pursuant to 15 U.S.C. § 78l or required to file reports under Section 78o(d), or any officer, director, employee, or agent of such issuer, or any stockholder acting on behalf of the issuer, using interstate commerce in connection with the payment of bribes, 15 U.S.C. § 78dd-1; (2) American companies and American persons using interstate commerce in connection with the payment of bribes, 15 U.S.C. § 78dd-2; and (3) foreign persons or businesses taking acts to further certain corrupt schemes, including ones causing the payment of bribes, while present in the United States, 15 U.S.C. § 78dd–3.

*Hoskins*, 902 F.3d at 71. The Second Circuit observed that, "[t]he single, obvious omission [in the statute] is jurisdiction over a foreign national who acts outside the

United States, but not on behalf of an American person or company as an officer, director, employee, agent, or stockholder." *Id.* at 85.

Mr. Villalobos does not fall within any of the three FCPA categories, and the indictment does not allege that he does.[7]  Instead, he is "a foreign national who [allegedly] act[ed] outside the United States, but not on behalf of an American person or company as an officer, director, employee, agent, or stockholder." *Id.*

---

[7] The indictment alleges that Mr. Villalobos helped two businessmen residing in the United States (Robert Rincon and Abraham Shiera) get their bills paid (and offered to help them get more contracts) as well as set up Swiss accounts to receive and funnel money.  But it does not allege that Mr. Villalobos was an officer, director, employee, or agent of an "issuer of securities" or an "American company" or that he committed a crime while inside the United States.  The bribes were paid by the U.S.-based businessmen from their U.S. accounts.  Mr. Villalobos was not an "officer, director, employee, or agent" of any of those companies – but Rincon and Shiera were.  Indictment paragraph 15 (defining Roberto Rincon as an "officer, director, employee, or agent"); paragraph 24 (defining Abraham Shiera as an "officer, director, employee, or agent"; and paragraphs 8 and 50 (not defining Mr. Villalobos that way, and further alleging that he was part of a "management team" that approached Rincon and Shiera). "Management team" as used in the indictment is a nickname for an alleged team of bribery coconspirators and is not a reference to actual members of the management of any U.S. company.  Mr. Villalobos was not, and is not alleged to have been, "an officer, director, employee, or agent" of any U.S. company.

Thus, in contrast to Mr. Villalobos, three alleged coconspirators mentioned in the indictment fall within the FCPA's reach:

| De Leon [codefendant] | United States Citizen ("domestic concern") |
|---|---|
| Roberto Rincon [charged separately] | Texas resident; Lawful Permanent Resident in United States ("domestic concern") |
| Abraham Shiera [charged separately] | Venezuelan national … but resided in Florida and controlled several U.S. companies ("domestic concern") |

The indictment also charges Cesar Rincon, Rafael Reiter, and Alejandro Isturiz, all three Venezuelan foreign officials not alleged to have resided in the United States.  Cesar Rincon – no relation to Roberto Rincon – chose to plead guilty and not to raise any jurisdictional challenge, which is his right but carries no precedential value.  Rafael Reiter is still in Spain. Isturiz has not appeared.

For this reason, the indictment presupposes Mr. Villalobos's criminal liability based on a "theor[y] of conspiracy" with codefendant De Leon, a U.S. citizen. This was the theory of *Hoskins*. However, "the FCPA's carefully-drawn limitations do not comport with the government's use of the complicity or conspiracy" in this way. *Id.* at 71-72.[8]

Significantly, the Second Circuit explained that Congress "desired that the [FCPA] not overreach in its prohibitions against foreign persons. Protection of foreign nationals who may not be learned in American law is consistent with the central motivations for passing the legislation, particularly foreign policy and the public perception of the United States. And the desire to protect such persons is pressing when considering the conspiracy and complicity statutes: these provisions are among the broadest and most shapeless of American law and may ensnare persons with only a tenuous connection to a bribery scheme." *Hoskins*, 902 F.3d at 94-95.

Therefore, "the presumption against extraterritoriality bars the government from using the conspiracy . . . statute[] to charge [Mr. Villalobos] with any offense

---

[8] The Second Circuit distinguished other criminal statutes – such as those prohibiting the importation of controlled substances into the United States – which do permit conspiracy and complicity liability to be applied to foreign defendants who commit the offenses abroad. *See Hoskins*, 902 F.3d at 97 (citing, *e.g.*, *United States v. Winter*, 509 F.2d 975 (5th Cir. 1975)). Yet, as the Second Circuit noted, "these cases all considered statutes prohibiting illegal importation of various items—statutes that certainly contemplated the punishment of extraterritorial action of precisely the kind that the defendants in the cases were convicted." *Id.*

that is not punishable under the FCPA itself because of the statute's territorial limitations. That includes . . . conspiracy to violate Section[] 78dd-2 . . . – because the FCPA clearly dictates that foreign nationals may only violate the statute outside the United States if they are agents, employees, officers, directors, or shareholders of an American issuer or domestic concern." *Hoskins*, 902 F.3d at 97.

For these reasons set forth in *Hoskins* and *Castle*, we move to dismiss Count Two.

## IB:
## COUNTS ONE AND FOUR SHOULD ALSO BE DISMISSED FOR LACK OF EXTRATERRITORIAL JURISDICTION OVER MONEY LAUNDERING.

Mr. Villalobos also moves to dismiss Counts One and Four for lack of extraterritorial jurisdiction. Those portions of the indictment charge him with a "substantive" count of money laundering (alleging a violation of 18 U.S.C. § 1956(a)(1)(B)(i)) and conspiracy to violate both 18 U.S.C. § 1956(a)(1)(B) and 1956(a)(2)(A)). There are two arguments for dismissal of these counts. First, these counts are based on a "specified unlawful activity" – alleged violations of the FCPA – for which Mr. Villalobos cannot be prosecuted (the same problem with Count Two discussed above). The second is that section 1956(f) expressly limits extraterritorial application of the money laundering statute in the case of a non-citizen who committed conduct abroad.

**A. The Logic of _Hoskins_ and _Castle_ Should be Extended to Money Laundering: Because Mr. Villalobos Cannot Be Prosecuted Under the FCPA, He Cannot Be Prosecuted for Money Laundering Offenses Based on FCPA Violations as a "Specified Unlawful Activity"**

If the government cannot use "conspiracy" to avoid the limits of the FCPA regarding non-citizens, then by the same reasoning, it cannot  the money laundering statute to achieve what the FCPA forbids.  That is, the logic of _Hoskins_ and _Castle_ applies to money laundering with an FCPA violation as the predicate offense just as it does to conspiracy to violate the FCPA; in both instances the foreign defendant cannot be charged with the underlying substantive FCPA offense. Consider for example the position of Mr. Castle, the Canadian public official.  Under the FCPA, he cannot be charged in the U.S. for receiving a bribe.  Therefore, the Fifth Circuit held, he could not be charged with "conspiracy" to violate the FCPA.   It would be equally "absurd" to allow a prosecution for "money laundering" for receiving the bribe that "promoted" the FCPA violation. That would fly in the face of the logic of the Fifth Circuit's ruling in _Castle_.

To establish a substantive violation of section 1956, the government must prove that the defendant specifically intended to either "promote" the predicate offense or "conceal or disguise" the proceeds from the predicate offense and actually did so or attempted to do so.  _See_ 18 U.S.C.  § 1956(a).[9]  "To establish conspiracy

---

[9] _See United States v. Trejo_, 610 F.3d 308, 314 (5th Cir. 2010) ("[T]he government must show the transaction at issue was conducted with the intent to promote the carrying on of a specified

to commit money laundering, the government must prove (1) that there was an agreement between two or more persons to commit money laundering and (2) that the defendant joined the agreement knowing its purpose and with the intent to further the illegal purpose [including the specific intent to promote or conceal the predicate offense]." *United States v. Fuchs*, 467 F.3d 889, 906 (5th Cir. 2006).

The illegal purpose of the money laundering conspiracy alleged in Count One was the intent to promote or conceal an FCPA violation. As with the general conspiracy statute (18 U.S.C. § 371), it would be illogical to apply the money-laundering conspiracy statute (18 U.S.C. § 1956(h)) to a non-citizen such as Mr. Villalobos when the predicate offenses (the "specified unlawful activity") are alleged FCPA violations for which he cannot be prosecuted.[10]

Congress did not intend such an illogical result. As noted above, Congress "desired that the [FCPA] not overreach in its prohibitions against foreign persons [such as Mr. Villalobos]. Protection of foreign nationals who may not be learned in

---

unlawful activity. It is not enough to show that a money launderer's actions resulted in promoting the carrying on of specified unlawful activity."); *United States v. Huezo*, 546 F.3d 174, 178-79 (2d Cir. 2008) ("[A] conviction for transaction money laundering, like a conviction for transportation money laundering, requires proof that the purpose or intended aim of the transaction was to conceal or disguise a specified attribute of the funds.").

[10] Similarly, when a count of an indictment is dismissed for failing to allege an offense or for insufficient evidence, and a money-laundering count is predicated on the alleged offense in the dismissed count, the money-laundering count must be dismissed as well. *See United States v. Pierce*, 224 F.3d 158, 162, 167-68 (2d Cir. 2000); *United States v. D'Alessio*, 822 F. Supp. 1134, 1146 (D. N.J.1993).

American law is consistent with the central motivations for passing the legislation, particularly foreign policy and the public perception of the United States." *Hoskins*, 902 F.3d at 94-95.  Money laundering conspiracy based on an alleged violation of the FCPA as the "specified unlawful activity" is closely analogous and thus should be treated in the same manner.

### B. 18 U.S.C. § 1956(f) Limits the Extraterritorial Reach of the Money Laundering Statute Regarding Foreigners

The second, independent reason to dismiss counts One and Four is the plain language of section 1956(f).  That section – enacted in 1986, as part of the original money-laundering statute – expressed a similar limit on extraterritorial application to foreign defendants for their conduct outside the United States.

In general, U.S. law contains a presumption against extraterritorial application: It is allowed only when Congress "affirmatively and unmistakably" permits it. *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090, 2100 (2016). This presumption applies even if a statute has a specific provision, like section 1956(f), governing its extraterritorial application. *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 455-56 (2007) ("[T]he presumption is not defeated . . . just because [a statute] specifically addresses [an] issue of extraterritorial application; it remains instructive in determining the extent of the statutory exception.").  The

extraterritorial reach of a federal statute goes no farther than Congress unambiguously expressed. *Id.*

Section 1956(f) contains a *limited* grant of extraterritorial jurisdiction:

(f) There is extraterritorial jurisdiction over *the conduct prohibited by this section* if –

(1) the conduct is by a United States citizen *or, in the case of a non-United States citizen, the conduct occurs in part in the United States*; and

(2) the transaction or series of related transactions involves funds or monetary instruments of a value exceeding $10,000.

18 U.S.C. § 1956(f) (emphasis added).

The legislative history of section 1956(f) confirms that Congress did not intend to extend section 1956 to a non-citizen for his "conduct" outside the United States:

Section 1956(f) is intended to clarify the jurisdiction of U.S. courts over extraterritorial acts that could be construed to fall within the scope of section 1956. *It is not the Committee's intention to impose a duty on foreign citizens operating wholly outside of the United States to become aware of U.S. laws.*

S. Rep. No. 433, 99th Cong., 2d Sess., at 14 (Sept. 3, 1986) (emphasis added).

Section 1956(f) requires dismissal of Count One (charging conspiracy to commit money laundering) and Count Four (the "substantive" money laundering count).

### i.     Count One

Section 1956(f) extends the money laundering statute to a U.S. citizen (like codefendant De Leon) anywhere, and to a non-citizen (like Mr. Villalobos) only for his "conduct" occurring in the United States.  The "conduct" required to violate Count One is a defendant's mere agreement with one or more persons to violate 18 U.S.C. § 1956(a)(1)(A) or (a)(2)(A).  No overt act is required.  *See Whitfield v. United States*, 543 U.S. 209 (2005) (holding that money laundering conspiracy does not require an overt act).  Mr. Villalobos is a non-citizen whose "conduct" alleged in the indictment occurred outside of the United States.  Based on the plain language of sections 1956(f) and (h), the United States does not have extraterritorial jurisdiction over him.

To be sure, Count One charges that some of Mr. Villalobos's alleged *conspirators* "use[d] a variety of bank accounts in the United States (including in the Southern District of Texas)" to send illegal payments for the benefit of Mr. Villalobos and others in the alleged conspiracy, *see* Indictment, Paragraph 73.  But Count One does not allege that *Mr. Villalobos himself* engaged in conduct within the United States but rather that he had an account in Switzerland and attended meetings outside the U.S.  The U.S. accounts were owned and controlled by Roberto Rincon and Abraham Shiera, and they directed the payments from the U.S. to Mr. Villalobos's alleged bank account in Switzerland.   Extraterritorial jurisdiction over

a non-citizen cannot be based on a *coconspirator's* conduct in the United States –
otherwise, section 1956(f)'s reference to the "conduct" of a "non-United States
citizen" would have no meaning. *See United States v. Lloyds TSB Bank PLC*, 639
F. Supp.2d 314, 324 (S.D.N.Y. 2009) ("To meet the jurisdictional requirement of §
1956(f)(1) that the money laundering conduct of Lloyds TSB, a non-United States
citizen, 'occurs in part in the United States,' the Government is reduced to relying
upon the conduct in the United States of securities fraud conspirators, who
transferred proceeds from the United States which were eventually deposited in
Kyprianou's accounts with the Bank in Switzerland. But this will not suffice . . . .");
*cf.*, *United States v. Hawit*, 2017 WL 663542, at \*6-\*8 (E.D.N.Y. 2017) (section
1956(f) requirement satisfied where wire fraud conspiracy implicated domestic
concern based on conduct by foreign defendant occurring within the United States).
To hold otherwise would render meaningless the jurisdictional restrictions of section
1956(f)(1).

Moreover, allowing extraterritorial jurisdiction over a non-citizen based on a
*coconspirator's* conduct in the United States would impute the U.S. actor's
presumed knowledge of American law to a non-citizen like Mr. Villalobos.  That
imputation would contradict Congress' intent *not* "to impose a duty on foreign
citizens operating wholly outside of the United States to become aware of [and be
subject to] U.S. laws."  S. Rep. No. 433, 99th Cong., 2d Sess., at 14 (Sept. 3, 1986).

### ii.    **Count Four**

Section 1956(f) also applies to Count Four, a "substantive" violation of section 1956(a)(1)(B)(i).  This count alleges that Mr. Villalobos and codefendant De Leon, a U.S. citizen, "did knowingly conduct, aid and abet, and cause another to conduct" an illegal wire transfer from "Rincon Company 2" (a Texas-based company, *see* Indictment, Paragraph 17) to a Swiss bank account.  Of course, this transfer occurred "in the Southern District of Texas and elsewhere," because, again, Rincon directed his bank located in Houston to make it.  But Mr. Villalobos was outside the United States on October 26, 2011 – the date of the transaction – and he did not give any order to a U.S. bank to wire the $515,000 in question.  At most, as alleged, Mr. Villalobos was complicitous from abroad in a bank transfer directed by someone else.   Mr. Villalobos did not direct this transfer, and the conduct by a person within the United States cannot be relied upon by the government to assert jurisdiction over Mr. Villalobos.  *See Lloyds TSB Bank PLC*, 639 F. Supp.2d at 321.

Section 1956(f) is consistent with *Hoskins:* a non-citizen acting abroad may not be hailed into a U.S. court for his alleged complicity in a money laundering act. *See also United States v. Yakou*, 428 F.3d 241, 252 (D.C. Cir. 2015) ("The aiding and abetting statute . . . is not so broad as to expand the extraterritorial reach of the underlying statute.").  In *Yakou*, the defendant was charged with violating the federal arms trafficking statute, 22 U.S.C. § 2778 and a corresponding federal regulation,

22 C.F.R. § 129.3(a), which applied to any "U.S. person, wherever located, and any foreign person located in the United States or otherwise subject to the jurisdiction of the United States." The D.C. Circuit held that 18 U.S.C. § 2 could not provide extraterritorial jurisdiction over the foreign defendant because the underlying statute itself provided no such extraterritorial jurisdiction. *Yakou*, 428 F.3d at 252-53.

Therefore, this Court should dismiss Count Four for the same jurisdictional defect plaguing Count One.

## II.
## AN ALTERNATIVE PRESUMPTION AGAINST EXTRATERRITORIAL JURISDICTION: *CHARMING BETSY*

### A. The *Charming Betsy* Presumption

Part IB above explains that the plain language of section 1956(f) demonstrates that there is no extraterritorial jurisdiction over Mr. Villalobos. In the alternative, assuming section 1956(f)(1) is not clear on its face, it is at least ambiguous whether it affords extraterritorial jurisdiction over Mr. Villalobos, which implicates a second presumption against extraterritorial jurisdiction.

"[A]n act of Congress ought never to be construed to violate the law of nations if any other possible construction remains." *Murray v. Schooner Charming Betsy*, 6 U.S. (2 Cranch) 64, 118 (1804). This is the so-called *Charming Besty* presumption, which is a presumption against extraterritorial jurisdiction distinct from the

presumption discussed in Part II.   The two presumptions operate independently, but both apply to federal statutes that are ambiguous concerning their extraterritorial reach.   *See United States v. Ali*, 718 F.3d 929, 935 (D.C. Cir. 2013) ("Because international law itself limits a state's authority to apply its laws beyond its borders, *Charming Betsy* operates alongside the presumption against extraterritorial effect to check the exercise of U.S. criminal jurisdiction.").

Although Congress may enact a statute that violates international law, it must be crystal clear that it intended to do so.   Therefore, under *Charming Betsy*, if there is any ambiguity at all in a federal statute concerning its extraterritorial reach, the statute must be construed *not* to violate international law.   *See Ali*, 718 F.3d at 935-36.   *Charming Betsy* requires a two-step inquiry: (1) whether the charged statute is ambiguous concerning whether it can be applied extraterritorially; and (2) whether international law would be violated by the statute's extraterritorial application.   If the answers to these two questions are both "yes," then *Charming Betsy* requires a court to avoid extraterritorial reach in order to avoid violating international law.

## B.   <u>The Relevant Statutory Provisions Are at Least Ambiguous</u>

Section 1956(f) creates at least an ambiguity (if not a clear rejection, as we argue above in Part IB) as to whether section 1956(h) applies to a non-citizen like Mr. Villalobos, whose alleged criminal "conduct" occurred outside the United

States.[11]   Section 1956(f) was enacted as part of the original money laundering statute in 1986, while section 1956(h) was enacted six years later, in 1992.  *See Whitfield v. United States*, 543 U.S. 209, 213 (2005).  Notably, Congress did not change the language of section 1956(f) when it added section 1956(h).

To this day, section 1956(f) still only extends the extraterritorial reach of the money-laundering statute to a non-United States citizen for his "conduct" that occurred at least "in part in the United States."  That "conduct" clearly refers to the *non-citizen*'s conduct in view of the rest of section 1956(f)(1), which states that there is extraterritorial jurisdiction over a U.S. citizen who commits a money laundering offense anywhere, whether "in" or "out" of the country.  *See* 18 U.S.C. § 1956(f)(1) ("There is extraterritorial jurisdiction over the conduct prohibited by this section if . . . the conduct is by a United States citizen.").

If Congress had intended for there to be extraterritorial jurisdiction over *all* members of a money laundering conspiracy, citizen and non-citizens alike, based solely on the conduct of a U.S. citizen (wherever it occurred) or on conduct of a co-conspirator that occurred in the United States, it would have clearly said so in section

---

[11] We repeat § 1956(f) here: "There is extraterritorial jurisdiction over the conduct prohibited by this section if – (1) the conduct is by a United States citizen or, in the case of a non-United States citizen, the conduct occurs in part in the United States; and (2) the transaction or series of related transactions involves funds or monetary instruments of a value exceeding $10,000."

Section 1956(h) reads: "Any person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy."

1956(f).  But it did not.  Rather, it drew a distinction between U.S. citizens and non-citizens.  And, as mentioned, Congress did not change § 1956(f) when it added § 1956(h)'s conspiracy provision six years later.  In 1986, when Congress drafted section 1956(f), section 1956 did not cover money-laundering conspiracies and, instead, only covered "substantive" offenses.  That was the "conduct" Congress had in mind in 1986.  The government cannot now be permitted to rewrite section 1956(f) to cover extraterritorial conspiratorial conduct by a non-citizen such as Mr. Villalobos based on what other members of the conspiracy did within the United States.

Furthermore, the D.C. Circuit in *Ali* recognized that both the federal complicity statute (18 U.S.C. § 2) and the general federal conspiracy statute (18 U.S.C. § 371) are "ambiguous as to their application abroad" concerning conduct committed by a foreign citizen.  *See Ali*, 718 F.3d at 935-36.  In *Ali*, the issue was whether the government had extraterritorial jurisdiction over a foreigner charged with both conspiracy to commit piracy and complicity in committing piracy when his criminal conduct occurred abroad.  First, the Court concluded that these statutes are ambiguous whether they apply in an extraterritorial manner.  *Id.* at 935-36. The D.C. then proceeded to decide whether the *Charming Betsy* presumption applied by analyzing whether international law prohibited extraterritorial prosecutions for

27

either conspiracy to commit piracy or complicity in piracy.[12]  As set out below, that same analysis supports dismissal here.

### C. Extraterritorial Application of the Statutory Charges to Mr. Villalobos Would Violate International Law

Because all the statutes under which Mr. Villalobos are charged are at least ambiguous in regard to their extraterritorial application, the next question under *Charming Betsy* is whether the law of nations (international law) recognizes the right of the United States to apply its FCPA and money laundering statutes extraterritorially to a foreign citizen whose criminal liability (as alleged in the indictment) is based solely on theories of complicity or conspiracy.

In analyzing this issue, a court must begin with the assumption that "[i]international law provides for limited instances in which nations may prosecute the crimes of foreign nationals committed abroad."  *Ali*, 718 F.3d at 942.  In other words, it is the exception, not the rule, for a government to apply its criminal laws in an extraterritorial manner.  As discussed below, it would violate international law principles to base liability on complicity or conspiracy to a non-citizen such as Mr. Villalobos, whose *own* alleged criminal conduct occurred abroad.

---

[12] *See Ali*, 718 F.3d at 936-37 (international law recognizes extraterritorial criminal liability "complicity" with piracy but not "conspiracy" to commit piracy, so the Court allowed a prosecution for complicity but not for §371 conspiracy).  *Id.* at 941 ("Because conspiracy [to commit piracy], unlike aiding and abetting, is not part of th[e] [international law] definition, and because § 371 falls short of expressly rejecting international law, *Charming Betsy* precludes Ali's prosecution for conspiracy to commit piracy.").

Under international law, there are five bases for extraterritorial application of domestic law. *Rivard v. United States*, 375 F.2d 882, 885 (5th Cir. 1967) ("The law of nations permits the exercise of criminal jurisdiction by a nation under five general principles. They are the territorial, national, protective, universality, and passive personality principles.").  The Fifth Circuit summarized these five "principles" as follows:

1. **Territorial**: "Jurisdiction is based on the place where the offense is committed."

2. **National**: "Jurisdiction is based on the nationality or national character of the offender."

3. **Protective**: "Jurisdiction is based on whether the national interest is injured."

4. **Universality**: "This principle is generally cited to cover universally prohibited activities, such as the slave trade or piracy." *United States v. Roberts*, 1 F. Supp.2d 601, 607 n.5 (E.D. La. 1998).

5. **Passive Personality**: "Jurisdiction is based on the nationality or national character of the victim."

*Rivard*, 375 F.2d at 885 nn.5-9.[13]

---

[13] The *Restatement (Third) of The Foreign Relations Law of the United States* groups these into three bases for "jurisdiction to prescribe law:"

(1) (a) conduct that, wholly or in substantial part, takes place within its territory; (b) the status of persons, or interests in things, present within its territory; (c) conduct outside its territory that has or is intended to have substantial effect within its territory;

(2) the activities, interests, status, or relations of its nationals outside as well as within its territory; and

None of these principles support extraterritorial application to a non-citizen living abroad for conspiracy or complicity in bribery of foreign officials and laundering money.

(1) Mr. Villalobos did not carry out criminal conduct inside the United States – thus, rendering the "territorial principle" inapplicable;

(2) Mr. Villalobos was not and is not a U.S. national (he is a Venezuelan citizen) – thus, rendering the "national principle" inapplicable;

(3) Mr. Villalobos' conduct was not intended to have, and did not have, a substantial effect within the United States. The bribe money was sent to Swiss bank account to bribe a Venezuelan official, and, in addition, the alleged offense was not directed "against the security of the United States" – thus, rendering the "protective principle" inapplicable;

(4) His conduct did not implicate "universal" crimes such as piracy or the slave trade – thus, rendering the "universality principle" inapplicable; and

(5) His conduct did not involve a United States victim – thus, rendering the "passive personality" principle inapplicable.

Because the indictment alleges that Mr. Villalobos acted outside of the U.S. and because there are no alleged U.S. victims, only the "protective" and "universality" principles will be further discussed.

---

(3) certain conduct outside its territory by persons not its nationals that is directed against the security of the state or against a limited class of other state interests.

*Id.,* § 402 ("Bases of Jurisdiction to Prescribe").

### i.   Protective Principle

As noted above, the "protective principle" permits extraterritorial jurisdiction for offenses that pose serious threats *within* the United States, including importing dangerous items, such as illegal drugs, *into* the United States. *See Hoskins*, 902 F.3d at 97.[14]  The use of U.S. banks to send bribe money *abroad* does not pose the same kind of threat and does not support extraterritorial jurisdiction over Mr. Villalobos. *Cf. Morrison v. Nat'l Australian Bank*, 561 U.S. 247, 266 (2010) ("[I]t is a rare case of prohibited extraterritorial application that lacks all contact with the territory of the United States. But the presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever some domestic activity is involved in the case.").

### ii.   Universality Principle

Violations of the FCPA and money laundering statute are not "universal" offenses such as war crimes, torture, and piracy, where international law itself

---

[14]  For that reason, Fifth Circuit cases such as *United States v. Winter*, 509 F.2d 975 (5th Cir. 1975), and *United States v. Suerte*, 291 F.3d 366 (5th Cir. 2002) – which addressed extraterritorial jurisdiction over foreign drug smugglers, who posed a serious threat to the United States – are inapplicable. *See Hoskins*, 902 F.3d at 97 ("[Such] cases all considered statutes prohibiting illegal importation of various items – statutes that certainly contemplated the punishment of extraterritorial action of precisely the kind that the defendants in th[ose] cases were convicted."). Cases like *Winter* and *Suerte*, involving the importation of drugs or other dangerous items into the United States are based on the "protective principle" of extraterritorial jurisdiction. *See United States v. Peterson*, 812 F.3d 486, 493 (9th Cir. 1987) ("Drug trafficking presents the sort of threat to our nation's ability to function that merits application of the protective principle of jurisdiction.").

clearly recognizes the theory of complicity (although not conspiracy).  *See Ali*, 718

F.3d at 936-41; *see also United States v. Suerte*, 2001 WL 1877264, at *5 (S.D. Tex.

2001) ("The international community has historically recognized certain crimes to

be so heinous, so universally despised, as to arouse universal concern. . . . As a result,

any nation may assert jurisdiction. The breadth of this jurisdiction, however, requires

that the list of applicable offenses be a narrow one. Accordingly, it is limited to the

crimes of piracy, aircraft hijacking, slavery, war crimes, genocide, torture, and

certain – but apparently not all – acts of terrorism."), *rev'd on other grounds*, 291

F.3d 366 (5th Cir. 2002); *see also United States v. Yousef*, 327 F.3d 56, 104-05 (2d

Cir. 2003) ("The class of crimes subject to universal jurisdiction traditionally

included only piracy. . . . In modern times, the class of crimes over which States can

exercise universal jurisdiction has been extended to include war crimes and acts

identified after the Second World War as 'crimes against humanity.'").

Because extending extraterritorial jurisdiction to Mr. Villalobos would violate

principles of international law, Counts One, Two, and Four should be dismissed

under the *Charming Betsy* presumption.   Similarly, because extraterritorial

jurisdiction can apply only where Congress "affirmatively and unmistakably"

creates it, the ambiguity of the charged statutes also invokes the general presumption

against extraterritoriality in *RJR Nabisco, Inc., v. European Community*, 136 S. Ct.

2100 (2016).

## III.

## BECAUSE THE FCPA AND THE MONEY LAUNDERING STATUTE DID NOT GIVE MR. VILLALOBOS FAIR NOTICE THAT HE COULD BE PROSECUTED IN THE U.S. FOR HIS ALLEGED CONDUCT ABROAD, THIS COURT SHOULD DISMISS COUNTS ONE, TWO, AND FOUR UNDER THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT.

For the same reason that the statutes are ambiguous, they are *vague* as applied to Mr. Villalobos' conduct in 2011-2013.   That is, the statutes did not then give *fair notice* to Mr. Villalobos, a non-citizen, of the government's current interpretation – that he would violate them by working abroad to help facilitate a bribe into Switzerland or Venezuela.  *See United States v. Lanier*, 520 U.S. 259, 265-66 (1997) (due process requires fair notice of what is criminal in order for the defendant to be later prosecuted).

"[F]air warning [means] language that the common world will understand, of what the law intends to do if a certain line is passed.  To make the warning fair, so far as possible the line should be clear. . . .  The ... principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed."  *Id. at* 265-66 (citations and internal quotation marks omitted); *see also id.* at 266 ("[T]he vagueness doctrine bars enforcement of a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application."). Numerous decisions of the Supreme Court and Fifth Circuit have declared state or

federal criminal statutes void for vagueness as applied based on lack of fair notice. *See, e.g.*, *Johnson v. United States*, 135 S. Ct. 2551 (2015) (striking down the "residual clause" in the definition of "crime of violence" in the Armed Career Criminal Act); *Kramer v. Price*, 712 F.2d 174 (5th Cir. 1983) (striking down Texas's former harassment statute), *decided on different grounds*, 723 F.3d 1664 (5h Cir. 1984) (en banc).

In the international law context, due process also requires a sufficient "nexus" between the United States and a foreign defendant. *See United States v. Davis*, 905 F.2d 245, 248–49 (9th Cir.1990) ("In order to apply extraterritorially a federal criminal statute to a defendant consistently with due process, there must be a sufficient nexus between the defendant and the United States . . . so that such application would not be arbitrary or fundamentally unfair."); *United States v. Yousef*, 750 F.3d 254, 262 (2d Cir. 2014) ("A court's power to hear a case does not, of course, conclusively establish the government's authority to prosecute it. Our jurisprudence is replete with limitations on the exercise of that authority, whether by virtue of constitutional provisions, like the Due Process Clause, or judicially created doctrines, like the presumption against extraterritoriality. . . . The due process requirement that a territorial nexus underlie the extraterritorial application of a criminal statute is just such a limitation. It protects criminal defendants from prosecutions that are 'arbitrary or fundamentally unfair.'") (citations omitted).   As

discussed above in Parts II and III, there is no such "nexus" between Mr. Villalobos and the United States.

Similarly, to avoid such due process concerns, the rule of lenity requires this Court to construe ambiguous penal statutes in favor of criminal defendants. *See Lanier*, 520 U.S. at 266; *see also United States v. Santos*, 553 U.S. 507, 514 (2008) (in applying the rule of lenity to a different provision of the money laundering statute) ("The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them. . . . This venerable rule not only vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain . . . . It also places the weight of inertia upon the party that can best induce Congress to speak more clearly and keeps courts from making criminal law in Congress's stead.").

As noted above, Congress intentionally did not require non-citizens living abroad to have a legal duty to understand how the FCPA and money-laundering statute might apply to their conduct occurring abroad.[15]  This congressional intent bolsters Mr. Villalobos's argument that he did not have fair notice in 2011-2013 that

---

[15] *See Hoskins*, 902 F.3d at 94-95 (noting that Congress "desired that the [FCPA] not overreach in its prohibitions against foreign persons.  Protection of foreign nationals who may not be learned in American law is consistent with the central motivations for passing the legislation, particularly foreign policy and the public perception of the United States."); S. Rep. No. 433, 99th Cong., 2d Sess., at 14 (Sept. 3, 1986) ("It is not the Committee's intention to impose a duty on foreign citizens operating wholly outside of the United States to become aware of U.S. laws [concerning money laundering].").

the government would allege that his conduct violated sections 371 and 1956.  For that reason, this Court should dismiss Counts One, Two, and Four.

## IV.
## CONCLUSION

For the foregoing reasons, this Court should dismiss Counts One, Two, and Four of the indictment.

/s/ David Gerger
David Gerger – Attorney in Charge
Texas Bar No. 07816360
dgerger@gkhfirm.com
Ashlee McFarlane
Texas Bar No. 24070243
amcfarlane@gkhfirm.com
GERGER KHALIL & HENNESSY, LLP
1001 Fannin, Suite 2450
Houston, Texas 77002
713.224.4400 – Telephone
713.224.5153 – Fax

Adam Kaufmann - Pro Hac
adam.kaufmann@lbkmlaw.com
Manuel Varela - Pro Hac
manuel.varela@lbkmlaw.com
LEWIS BAACH KAUFMANN
MIDDLEMIS, PLLC
The Chrysler Building
405 Lexington Ave., 62nd Floor
New York, New York 10174
212-826-7001 – Telephone
212-826-7146 – Fax

**ATTORNEYS FOR DEFENDANT**
**NERVIS GERARDO**
**VILLALOBOS-CÁRDENAS**

## <u>CERTIFICATE OF SERVICE AND CONFERENCE</u>

This pleading was electronically filed with the Clerk of Court using the CM/ECF system which will send notification to all counsel of record.

The United States opposes this motion.

 /s/ David Gerger
David Gerger